UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **TEMPO NETWORKS LLC,** | Civ. No. 2:14-6334 (WJM) |
| Plaintiff, | |
| v. | **OPINION** |
| **GOVERNMENT OF NIA,** *et al.*, | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff TEMPO Networks LLC ("TEMPO") filed this case against Defendants the Government of Nevis,[1] Nevis Island Administration ("NIA"), and Ministry of Culture, (collectively, the "NIA Defendants"), as well as Minister Mark Brantley and VON Radio. Plaintiff asserts breach of contract and defamation claims arising from a five-year contract to produce events during NIA's annual "Culturama" festival.

This matter comes before the Court on (1) a motion to dismiss by the NIA Defendants and Minister Brantley (together, the "Moving Defendants") (ECF No. 12), (2) Plaintiff's motion to amend (ECF No. 16), and (3) Plaintiff's motion for default judgment against VON Radio (ECF No. 20). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons explained below, NIA Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part, Plaintiff's motion to amend is **GRANTED**, and Plaintiff's motion for default judgment is **DENIED**.

I.   BACKGROUND

The following facts are alleged in the First Amended Complaint ("FAC"). Plaintiff TEMPO is a media production and entertainment company that specializes in the production and dissemination of Caribbean cultural media. Compl. ¶ 7, ECF No. 4. Defendant NIA is a governmental body for the island of Nevis – one of two islands in the Federation of St. Kitts and Nevis. *Id.* ¶¶ 2-3. Defendant Minster Mark Brantley is the Deputy Prime Minister for NIA, the Minister of Tourism, and the leader of the opposition party in Nevis. *Id.* ¶ 3. Minister Brantley also hosts a radio show on Defendant VON

---

[1] Incorrectly pleaded as "Government of NIA."

Radio, a broadcast radio station in Nevis which is accessible over the air and worldwide on the internet. *Id.*

In 2008, NIA and TEMPO entered into a five-year contract to produce an annual event for NIA's Culturama festival (the "Agreement"). Compl. ¶ 7. Specifically, TEMPO would provide marketing and promotion for Nevis and Culturama. *Id.* In return, NIA agreed to pay TEMPO $75,000 annually to produce the event. *Id.* TEMPO would also receive additional fees from gate receipts from the event. *Id.* The Agreement contains a choice of law provision, which states as follows:

> The validity, interpretation and construction of this Agreement, and all other matters related to this Agreement, shall be interpreted and governed by the laws of the State of New Jersey. Any action or proceeding commenced by either party in connection with this Agreement shall be commenced exclusively in the state or federal courts situated in the County of Essex, State of New Jersey.

Agreement, Ex. A at ¶ 10, ECF No. 16-1. The Agreement also contained a confidentiality provision. *Id.*, Ex. A at ¶ 15.

The parties each performed their obligations under the Agreement in 2008. Compl. ¶¶ 9, 12. Following that first year, Defendants did not make any payments or "fulfill any of [their] obligations under the Agreement." *Id.* ¶ 13. The FAC contains no allegations that Culturama took place or that any event was held after the first year.

On October 17, 2014, Minister Brantley was served with a copy of the Complaint first filed in this action. Compl. ¶ 44. On October 21, 2014, Minister Brantley allegedly posted defamatory statements about TEMPO and its CEO on his personal Facebook page. *Id.* ¶ 50. He also announced and posted portions of the Agreement on his Facebook page. *Id.* ¶ 51. And On October 22, 2014, Minister Brantley allegedly made defamatory statements about TEMPO and its CEO on his weekly radio show, which was broadcast on VON Radio's network. *Id.* ¶¶ 45, 50. Plaintiff subsequently filed the FAC, which seeks damages for the defamatory statements.

## II.   DISCUSSION

Moving Defendants move to dismiss all claims against them. Plaintiff seeks leave to file a proposed second amended complaint (the "SAC"). Plaintiff also requests default judgment against VON Radio. The Court will first consider the motion to dismiss and will then move to the motion to amend and the motion for default judgment.

### A.  MOTION TO DISMISS

The FAC asserts claims for breach of contract (Counts One, Two, and Five), unjust enrichment (Count Three), breach of the implied covenant of good faith and fair

2

dealing (Count Four), and defamation and false light (Count Six). Plaintiff requests specific performance and attorney's fees for its breach of contract claim.

Moving Defendants move to dismiss the FAC for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), improper process and service of process under Federal Rules of Civil Procedure 12(b)(4) and (5), and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### i. Subject Matter Jurisdiction

Count Six asserts claims for defamation and false light against all Defendants. Moving Defendants argue that the Court lacks subject matter jurisdiction over the claims against the NIA Defendants and Mark Brantley in Count Six. Moving Defendants further argue that the FAC fails to allege subject matter jurisdiction over all claims against Minister Brantley in his individual capacity and VON Radio. The Court agrees.

### 1. The NIA Defendants

The NIA Defendants are subject to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330 & 1602, *et seq.* Moving Defendants contend that, under the FSIA, the Court lacks subject matter jurisdiction over the tort-based claims in Count Six against the NIA Defendants. Plaintiff argues that the NIA Defendants implicitly waived their right to immunity under the FSIA.

Under the FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts," and "unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Section 1605(a)(1) of the FSIA provides that a foreign state may waive its sovereign immunity "either explicitly or by implication." Here, there are no express waivers of immunity. Rather, Plaintiff argues that the NIA Defendants implicitly waived their immunity by entering into the Agreement, which contains a choice of law clause.

Federal courts construe the implied waiver provision of Section 1605(a)(1) narrowly. *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991). The legislative history of FSIA gives three examples of circumstances in which courts have found implied waiver: (a) where a foreign state has agreed to arbitration in another country, (b) where a foreign state has agreed that the law of a particular country should govern a contract, and (c) where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity. *See Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1291, n.24 (11th Cir. 1999) (citing H.R.Rep. No. 94-1487, at 18 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617); *Shapiro*, 930 F.2d at 1017. Courts "have been reluctant to find an implied waiver where

3

the circumstances [are] not similarly unambiguous" or "unmistakable." *Shapiro*, 930 F.2d at 1017. Accordingly, "strong evidence" that the foreign state intended to waive its immunity is generally required. *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 287 (5th Cir. 1993).

The Agreement states that "[t]he validity, interpretation and construction of this Agreement, and all other matters related to this Agreement, shall be interpreted and governed by the laws of the State of New Jersey." Agreement, Ex. A at ¶ 10. Plaintiff argues that by agreeing to this choice of law clause, the NIA Defendants waived their sovereign immunity for the defamation claim. The Court disagrees. Minister Brantley's allegedly defamatory statements, which were made during a private radio show years after the alleged breach of the Agreement, are not sufficiently "related to the Agreement" so as to be unambiguously and unmistakably covered by the choice of law clause. Because the language in the choice of law clause is not clearly applicable to the claims in Count Six, it does not constitute strong evidence that the NIA Defendants intended to waive their sovereign immunity as to those claims. The Court thus lacks jurisdiction over the claims against the NIA Defendants in Count Six.

### 2. Minister Brantley in his official capacity

Minister Brantley is sued in both his individual and official capacities. The Court will first consider the claims against him in his official capacity.

The FSIA does not apply to suits against foreign officials unless the "state is the real party in interest." *See Samantar v. Yousuf*, 560 U.S. 305, 325 (2010). Here, the state is the real party in interest as to the claims in Count Six against Minister Brantley in his official capacity. *See Smith Rocke Ltd. v. Republica Bolivariana de Venezuela*, No. 12-7316, 2014 WL 288705, at *11 (S.D.N.Y. Jan. 27, 2014) (dismissing, under the FSIA, claims against employees of a Venezuelan governmental regulatory body, who were sued in their official capacities). The Complaint itself supports this conclusion. In Count Six, the FAC asserts claims based on "[t]he actions of Brantley, on behalf of the NIA . . ." and alleges that "[t]he continuing actions of Mark Brantley have increased the potential liability of the [NIA]." Compl. ¶¶ 56, 58; *see Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 72 (D.D.C. 2013), *reconsideration denied* (July 12, 2013), *aff'd*, 782 F.3d 9 (D.C. Cir. 2015) (dismissing claims against Iranian government officials where it was apparent, based on the complaint and other filings, that plaintiffs' theory of the case was that the actions taken by the officials were the actions of the Iranian regime). Thus, as with the claims in Count Six against the NIA Defendants, the Court lacks subject matter jurisdiction over the claims in Count Six against Minister Brantley in his official capacity.

### 3. Minister Brantley in his individual capacity and VON Radio

Moving Defendants argue that the Court lacks subject matter jurisdiction over all claims against Minister Brantley, individually, and VON Radio, because the jurisdictional allegations in the FAC do not demonstrate complete diversity. The Court agrees. Plaintiff is a limited liability company, and the FAC fails to identify and set forth the citizenship of each of its members. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) ("[T]he citizenship of an LLC is determined by the citizenship of its members.); *S. Freedman & Co. v. Raab*, 180 F. App'x 316, 320 (3d Cir. 2006) (citations and quotations omitted) (stating that "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly . . . ."). Further, there are no allegations regarding the citizenship of Defendant VON Radio. The Court will thus dismiss the claims against Minister Brantley in his individual capacity and VON Radio for lack of subject matter jurisdiction.

Because the Court finds that it lacks subject matter jurisdiction over Count Six, it will not reach Defendants' argument that Defendants have insufficient contacts with New Jersey to establish personal jurisdiction for Count Six or that Count Six fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### ii. Insufficient Process and Service of Process

Moving Defendants move to dismiss the FAC as against the NIA Defendants for insufficient process and insufficient service of process. Defendants argue that the NIA Defendants were not properly served under the FSIA. The Court declines to dismiss the FAC on this basis.

Federal Rule of Civil Procedure 4(j)(1) states that "[s]ervice of process upon a foreign state or a political subdivision, agency, or instrumentality thereof shall be effected pursuant to 28 U.S.C. § 1608 [the FSIA]." Section 1608(a) of the FSIA provides that service of process on a foreign state or political subdivision of a foreign state may be effected several ways, including:

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by

>the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
>
>(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services . . . . .

28 U.S.C. § 1608(a).

Plaintiff argues that it served the NIA Defendants pursuant to the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention").  But because Nevis and St. Kitts are not listed as current members or signatories of the Hague Convention, the Hague Convention does not apply.[2]  Additionally, no special arrangement exists in this case, and Plaintiff admits that it has not served the NIA Defendants under Section 1608(a)(3) or (4).  Pl.'s Opp'n Br. 19, ECF No. 15.  Thus, the record indicates that Plaintiffs have not yet properly served the NIA Defendants.

However, in the interests of justice, this Court finds it unnecessary to dismiss the claims against the NIA Defendants for insufficient process or insufficient service of process at this time.  *Cf. Vorhees v. Fischer & Krecke*, 697 F.2d 574 (4th Cir. 1983) (holding that the district court should not have dismissed the action for invalid service of process under the Hague Convention until the plaintiffs were given a reasonable opportunity to attempt to effect valid service of process on the defendant).  The NIA Defendants received actual notice of the suit, and there is no showing of prejudice to Defendants.  *See Lippus v. Dahlgren Mfg. Co.*, 644 F. Supp. 1473, 1479 (E.D.N.Y. 1986).  Further, the service defects appear readily curable.  *Id.*  The Court will thus deny the motion to dismiss under Rules 12(b)(4) and (5), but will require Plaintiff to effect proper service on the NIA Defendants within 30 days.

### iii.  Failure to State a Claim

Moving Defendants argue that because the FAC fails to allege any contract claims against Minister Brantley, the Court should dismiss all remaining claims against him.  Moving Defendants also argue that Counts Three, Four, and Five fail to state a claim.

---

[2] *See* Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (the list of contracting states to the Hague Convention on Service Abroad does not include St. Kitts or Nevis as signatories) (last visited Aug. 6, 2015).

The Court will dismiss the remaining claims against Minister Brantley, as well as Counts Three and Four. The Court will deny the motion to dismiss Count Five.

### 1. Claims against Minister Brantley

Counts One through Five assert breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing against Minister Brantley. It is unclear whether Plaintiff seeks recovery from Minister Brantley in his official capacity or individual capacity on these claims. However, because the Court has found that the FAC fails to adequately allege subject matter jurisdiction as to Minister Brantley in his individual capacity, this discussion will focus on the claims in Count One through Five against him in his official capacity.

The Court finds that the FAC fails to allege any breach of contract or related claim against Minister Brantley. Minister Brantley is not alleged to have signed the Agreement or to have been a party to the Agreement. Further, the claims against Minister Brantley in his official capacity are redundant, given that Plaintiff has also filed suit against the NIA Defendants. *Cf. Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 (1997) (affirming a district court's dismissal of claims against public officials in their official capacities where plaintiff had also filed claims against the township, rendering the plaintiff's suit against the officers redundant). Accordingly the claims in Counts One through Five against Minister Brantley in his official capacity are dismissed with prejudice.

### 2. Count Three – Unjust Enrichment

In Count Three, Plaintiff asserts a claim for unjust enrichment. To establish unjust enrichment under New Jersey law, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (1994). "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.* at 554.

Here, the FAC fails to state a claim for unjust enrichment. According to the Complaint, Plaintiff received payment for preforming its obligations under the Agreement during the first year. Compl. ¶¶ 9, 12. And the allegations contain no showing that Plaintiff conferred any benefit upon Defendants following that first year. The Court will thus dismiss Count Three without prejudice.

### 3. Count Four - Implied Covenant of Good Faith and Fair Dealing

7

In Count Four, Plaintiff seeks recovery for breach of the implied covenant of good faith and fair dealing. Under New Jersey law, all contracts include an implied covenant that parties will act in good faith. *Urbino v. Ambit Energy Holdings, LLC*, No. 14-5184, 2015 WL 4510201, at *6 (D.N.J. July 24, 2015) (citing *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997). It follows that a claim for breach of that covenant requires malice or bad faith. *See id.*; *Wilson v. Ameriada Hess Corp.*, 773 A.2d 1121, 1126-27 (N.J. 2001).

Count Four fails because the FAC fails to allege facts supporting the theory that Defendants have exercised their contractual rights in bad faith. The Court will thus dismiss Count Four without prejudice.

### 4. Count Five – Request for Attorney's Fees

In Count Five, Plaintiff seeks attorney's fees in connection with his breach of contract claim. Moving Defendants argue that the Court should dismiss Count Five, because there is no cause of action for contractual attorney's fees. The Court agrees that the request for attorney's fees is technically a contractual remedy, not a cause of action. However, Plaintiff adequately alleges that it has a contractual right to its attorney's fees upon a breach of the Agreement. The Court sees no value in dismissing Count Five just so Plaintiff can move those allegations to a different section of its complaint. Accordingly, the Court will deny the motion to dismiss Count Five.

### iv. Jury Demand

Finally, Moving Defendants ask the Court to strike the jury demand. A jury trial is unavailable against a foreign state, even where a foreign state is subject to suit under the FSIA. *See* 28 U.S.C. § 1603; *Bailey v. Grand Trunk Lines New England*, 805 F.2d 1097, 1100 (2d Cir. 1986). Because the Court has dismissed all claims besides those against the NIA Defendants in Counts One, Two, and Five, the Court will strike the jury demand from the FAC.

### B. MOTION TO AMEND

The Court next turns to Plaintiffs' motion to amend. Plaintiff's motion includes a proposed Second Amended Complaint (the "SAC"). The Court finds that the proposed SAC does not cure the deficiencies described above. For instance, the SAC still fails to identify and set forth the citizenship of Plaintiff's members. Additionally, Plaintiff attempts to cure the defects in Count Three by adding allegations that the NIA Defendants "benefited from the enhanced exposure generated from the event" and that, by producing the first event, Plaintiff increased "the cultural and economic development of [Nevis]." Compl. ¶¶ 40, 41. Plaintiff also alleges that the parties had a "partnership" that contemplated the first year as "foundational" from which "more lucrative profits" would flow in later years. Compl. ¶ 12. However, Plaintiff's allegations remain too

speculative to state a claim in Count Three.  The SAC still fails to sufficiently allege that Plaintiff conferred a tangible benefit upon the NIA Defendants without receiving payment.  Additionally, while the SAC adds "Quantum Meruit" to the title for Count Three, it provides no explanation as to why Plaintiff believes it has such a claim.

The SAC also fails to cure the deficiencies in Count Four.  Plaintiff adds an allegation that the allegedly defamatory comments by Minister Brantley destroyed Plaintiff's ability to benefit from the good will and development of its name recognition in Nevis.  Compl. ¶ 45.  But defamatory comments made years after the Agreement was allegedly breached are not sufficiently connected to the parties' obligations under the Agreement to violate the implied covenant of good faith and fair dealing.  The SAC still lacks any indication that Defendants exercised their contractual rights in bad faith.

Because the SAC fails to cure the deficiencies described above, the Court will not allow Plaintiff to file the proposed SAC.  However, given the Third Circuit's demonstrated liberality toward amendments under Federal Rule of Civil Procedure 15(a), the Court will grant Plaintiff thirty days to file an amended complaint consistent with this Opinion.

### C.  Motion for Default Judgment

Plaintiff moves for default judgment against VON Radio.  Because the Court has dismissed all claims against VON Radio, the motion for default judgment is **DENIED** as moot.

## III.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part, as follows:

- Moving Defendants motion to dismiss this action in its entirety for insufficient process and insufficient service of process is **DENIED**.  If Plaintiff fails to effect proper service within thirty days from the date of this Opinion, Moving Defendants may file another request for dismissal on these grounds.

- All claims against Minister Brantley in his individual capacity and VON Radio are **DISMISSED WITHOUT PREJUDICE** for failure to allege subject matter jurisdiction.

- All claims against Minister Brantley in his official capacity are **DISMISSED WITH PREJUDICE**.  Counts One, Two, Three, Four, and Five are dismissed for failure to state a claim.  Count Six is dismissed for lack of subject matter jurisdiction.

9

- The claims against the NIA Defendants in Count Six are **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction.

- The request to strike the jury demand from the FAC is **GRANTED**.

Additionally, Plaintiff's motion to amend is **GRANTED**.  Plaintiff shall have thirty days to file an amended complaint consistent with this Opinion.  Finally, Plaintiff's motion for default judgment against VON Radio is **DENIED** as moot.  An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: August 12, 2015**