UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TEMPO NETWORKS LLC**, | Civ. No. 2:14-06334 (WJM) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **GOVERNMENT OF NIA, et al.,** | |
| **Defendants.** | |

<u>**WILLIAM J. MARTINI, U.S.D.J.**</u>:

Plaintiff TEMPO Networks LLC ("TEMPO") filed this action against Defendants Nevis Island Administration ("Nevis"), and Nevis's Ministry of Culture (collectively, "NIA").  Plaintiff asserts breach of contract and unjust enrichment claims arising from a five-year contract with NIA to produce events during NIA's annual "Culturama" festival.

This matter comes before the Court on NIA's partial motion to dismiss TEMPO's Second Amended Complaint ("SAC").  Specifically, NIA moves to dismiss TEMPO's unjust enrichment and breach of the implied covenant of good faith and fair dealing claims (Counts 3, 4, and 5) under Federal Rule of Civil Procedure 12(b)(6).  NIA also moves to strike TEMPO's demands for punitive damages and a jury trial.  There was no oral argument.  Fed. R. Civ. P. 78(b).  For the reasons set forth below, NIA's partial motion to dismiss and motion to strike are **GRANTED**.  Accordingly, Counts 3, 4, and 5 of the SAC are **DISMISSED WITH PREJUDICE**.

I.    BACKGROUND

A.  Underlying Facts

The following facts are alleged in the SAC.  Plaintiff TEMPO is a media, entertainment, and event company that specializes in the development of Caribbean cultural media.  ECF doc. 33 ("SAC") ¶ 7.  Defendant Nevis is a governmental body for the island of Nevis – one of two islands in the Federation of St. Kitts and Nevis.  *Id*. ¶ 2.  Defendant Ministry of Culture is a governmental subdivision created by Nevis.  *Id* ¶ 3.

In 2008, NIA and TEMPO entered into a five-year contract (the "Agreement"). TEMPO agreed to produce a "live and direct concert" for NIA's 2008 Culturama festival, and similar events for each annual Culturama festival thereafter. *Id*. ¶ 7. NIA agreed to pay TEMPO $75,000 annually, plus 90% of the net proceeds of each event, and TEMPO's infrastructure costs and other related expenses. *Id*.

The parties each performed their obligations under the Agreement in 2008, except insofar as NIA did not pay for TEMPO's infrastructure and transportation costs. SAC ¶¶ 11, 34. Following that first year, NIA did not make any payments or "fulfill any of its obligations under the Agreement." *Id*. ¶ 35.

Pursuant to the Agreement, TEMPO also agreed to produce two television programs from the Culturama event. SAC, Ex. A (Agreement), ¶ 5. These services were not to be compensated by the $75,000 a year payments. *Id*. ¶ 7; SAC ¶ 9. Rather, the Agreement stated that TEMPO would retain full exploitation rights, including all production and broadcast rights, as well as full ownership over these programs. *See* Agreement at Ex. A. Specifically, the Agreement set forth that:

> TEMPO and any designees of TEMPO shall have the sole, exclusive, unrestricted and unlimited right to exploit and/or cause the exploitation of the Event and all recordings made and produced by TEMPO in connection with the Event, and to edit, modify, alter, translate, adapt and create derivative works thereof, in any medium and in any manner whatsoever whether presently or hereafter known, as well as the universe-wide, perpetual right to communicate, reproduce, perform, display, broadcast, transmit, communicate and exploit the same by and through any and all manners, means and methods, now and hereafter known.
>
> TEMPO and its designees shall have the unlimited right to exploit the Event and all recordings made and produced by TEMPO in connection with the Event for all purposes by any means now or hereafter known, and in any form whatsoever, whether alone or with other content, under any trademarks, trade names and labels with no additional compensation to Ministry of Culture other than as is provided for in this Agreement.

Agreement at Ex. A ¶ 2. The Agreement further stated that: "[t]his Agreement . . . constitutes the parties' entire agreement with respect to the subject matter hereof and supersedes all prior statements or agreements, both written and oral." *Id*. ¶ 11.

TEMPO alleges that "it filmed and aired multiple television programs numerous times pertaining to the Event and pursuant to the Agreement. These programs were heavily promoted and were featured in prime time, providing tangible benefits and promotion for the NIA Defendants for many years following the first Event." SAC ¶ 14. TEMPO further alleges that, due to the "date and time of the [airing of] these shows, as well as other

standard factors, TEMPO lost the opportunity to be paid [millions of dollars] by airing other programs [instead]." *Id*. ¶¶ 21, 25, 29.  TEMPO claims that "[t]he costs incurred by TEMPO in putting together these media broadcasts were to be compensated for by the revenue produced through the five-year term of the Agreement in connection with the Event." *Id*. ¶ 15.

### B.  The Instant Action

In August 2015, this Court dismissed in part TEMPO's first amended Complaint, and granted leave to file a second amended Complaint.  ECF doc. 24.  TEMPO filed the SAC, raising the following counts: (1) breach of contract; (2) specific performance; (3) unjust enrichment; (4) unjust enrichment[1]; (5) breach of the implied covenant of good faith and fair dealing (6) attorney's fees.  NIA now moves to dismiss Counts Three, Four, and Five of the SAC for failure to state a claim, and to strike TEMPO's demand for punitive damages and a jury trial.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a Court is not obliged to accept as true allegations which are contradicted by documents annexed to a pleading and properly considered on a motion to dismiss.  *See, e.g., Genesis Bio Pharm., Inc. v. Chiron Corp.*, 27 F. App'x 94, 100 (3d Cir. 2002)

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

---

[1] In its opposition to NIA's motion to dismiss, TEMPO claims that the duplicative unjust enrichment count was actually intended to be a quantum meruit claim, and presents arguments to support this new claim.

## III.   DISCUSSION

### A.  Motion to Strike

NIA's unopposed motion to strike TEMPO's demands for punitive damages and a jury trial is **GRANTED**.  As the Court found in its previous opinion, NIA is subject to the FSIA, 28 U.S.C. §§ 1330 & 1602, *et seq*.  A jury trial is unavailable against a foreign state, even where a foreign state is subject to suit under the FSIA.  28 U.S.C. § 1603; *Bailey v. Grand Trunk Lines New England*, 805 F.2d 1097, 1100 (2d Cir. 1986).  The FSIA further mandates that a "foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages."  *See* 28 U.S.C. 1606.  Accordingly, TEMPO's punitive damages claims against Nevis and the Ministry of Culture (identified in the amended Complaint as a "governmental body" and a "governmental subdivision," respectively, of NIA), are stricken.

### B.  Motion to Dismiss

### 1.  Count Three: Unjust Enrichment

To establish unjust enrichment under New Jersey law, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust."  *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (1994).  "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights."  *Id*. at 554.

TEMPO alleges that NIA was unjustly enriched by virtue of its failure to pay TEMPO for its "recording, producing, and airing of numerous programs" related to the Culturama Event.  SAC ¶ 55.  According to TEMPO, these programs "provid[ed] tangible benefits and promotion for [NIA] for many years following the first Event."  SAC ¶ 14.  These allegations suffer from the same deficiencies that the Court observed in its previous opinion with respect to TEMPO's proposed unjust enrichment claim: they "remain too speculative to state a claim."  *See* ECF doc. 24 at 8-9; *see also Feather v. United Mine Workers of Am.*, 711 F.2d 530, 541 (3d Cir. 1983) (stating that a "speculative, intangible benefit is not within the definition of unjust enrichment.").  Merely declaring that a benefit is "tangible," without more detail, does not make it so.

Moreover, the terms of the parties' Agreement directly contradict TEMPO's unjust enrichment claim.  First, rather than conferring upon NIA any benefit arising out of the programs, the Agreement explicitly granted TEMPO any benefit from the recording, production and airing of the programs.  *See* Agreement at Ex. A ¶ 2 ("TEMPO and its designees shall have the unlimited right to exploit the Event and all recordings made and produced by TEMPO in connection with the Event . . . with no additional compensation to Ministry of Culture other than as is provided for in this Agreement.").  Where "there is a

disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control." *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 n.8 (3d Cir. 1998); *see also In re PDI Sec. Litig.,* No. 02–CV–0211, 2005 WL 2009892, *21 (D.N.J. Aug. 17, 2005) ("When allegations contained in a complaint are contradicted by the document it cites, the document controls."). Second, TEMPO has failed to allege that it "expected remuneration from the defendant at the time" it produced the programs. *VRG Corp.*, 641 A.2d at 526. Instead, TEMPO admits that "these services were not to be compensated by the $75,000 a year payments," but suggests that the costs of producing the programs would be covered by future revenue "produced through the five-year term of the Agreement," which is not stated anywhere in the Agreement. SAC ¶¶ 9, 15.

Because TEMPO's unjust enrichment claim is directly contradicted by the terms of the Agreement, any amendment to the Complaint would be futile. *Anderson v. City of Philadelphia*, 65 F. App'x 800, 801 (3d Cir. 2003). The Court will thus dismiss Count Three with prejudice.

### 2. Count Four: Unjust Enrichment

Count Four presents a duplicative claim for unjust enrichment based on the media programs. This Count is dismissed with prejudice for the reasons described in connection with Count Three above.

In its letter brief opposing NIA's motion to dismiss, TEMPO claims that the SAC contained a typographical error, and Count Four was intended to be a claim for quantum meruit, and presents arguments in support of that new claim. A complaint cannot be amended (or supplemented) by way of an opposition brief to a motion to dismiss. *Pennsylvania ex rel. v. Zimmerman v. Pepsico,* 836 F.2d 173 (3d Cir. 1988). Should TEMPO wish to add a quantum meruit claim, it should seek leave to file an amended Complaint. However, the Court cautions TEMPO that any claim for quantum meruit based on the media programs would fail for the reasons the unjust enrichment claims fail.

### 3. Count Five: Breach of the Implied Covenant of Good Faith and Fair Dealing

In Count Five, TEMPO seeks recovery for breach of the implied covenant of good faith and fair dealing. Under New Jersey law, all contracts include an implied covenant that parties will act in good faith. *Urbino v. Ambit Energy Holdings, LLC*, No. 14-5184, 2015 WL 4510201, at *6 (D.N.J. July 24, 2015) (citing *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997). It follows that a claim for breach of that covenant requires malice or bad faith. *See id.*; *Wilson v. Ameriada Hess Corp.*, 773 A.2d 1121, 1126-27 (N.J. 2001). "[A]n allegation of bad faith or unfair dealing should not be permitted to be advanced in the abstract and absent improper motive." *Wilson*, 773 A.2d at 1130.

As the basis for Count Five, TEMPO alleges that "NIA knew that it could keep all the profits from the cinematic work done by Plaintiff if they simply breached the Agreement after year one of the Event." SAC ¶ 64. TEMPO's abstract claim of bad faith cannot sustain Count Five: it has not alleged any "profit" NIA gained (or attempted to gain) from the cinematic work. And, as described above, pursuant to the terms of the Agreement, TEMPO, not NIA, was entitled to any potential profit or benefit from the media programs. The Court will thus dismiss Count Five with prejudice.

## IV.    CONCLUSION

For the reasons stated above, Defendant's partial motion to dismiss is **GRANTED**, and Counts 3, 4, and 5 of the SAC are **DISMISSED WITH PREJUDICE**. Defendant's motion to strike is **GRANTED**. An appropriate order follows.

                                               /s/ William J. Martini
                                        **WILLIAM J. MARTINI, U.S.D.J.**

**Date: May 9, 2016**